**SECURITY TITLE & TRUST COMPANY, Appellant,**

v.

**TOWER LAND & INVESTMENT COMPANY, Appellee.**

No. 19389.

Court of Civil Appeals of Texas, Dallas.

Dec. 27, 1977.

Edward J. Drake, Brady, Drake & Wilson, Dallas, for appellant.

H. Dee Johnson, Jr., Johnson & Cravens, Dallas, for appellee.

GUITTARD, Chief Justice.

The party insured by a contract of title insurance brought this suit against the insurer for expenses incurred in defending a suit for an undivided interest in the property covered by the contract. The insurer had refused to defend the earlier suit on the ground that it was a type of suit excluded from coverage by the terms of the contract. In the cause now on appeal, the trial court, sitting without a jury, rendered judgment for the insured. We affirm.

The contract in question guarantees to the insured "good and indefeasible title" to a certain tract of land and states the extent of the insurer's liability as follows:

Said Company shall not be liable in a greater amount than actual monetary loss of assured, and in no event shall said Company be liable for more than EIGHTY NINE THOUSAND AND NO/100 _ _ _ _ _ _ ($89,000.00) _ _ _ _ DOLLARS, and shall, at its own cost, defend said assured in every suit or proceeding on any claim against or right to said land, or any part thereof, adverse to the title hereby guaranteed . . . . .

The particular exclusion relied on by the insurer is as follows:

Nothing contained in this policy shall be construed as insuring against loss or damage by reason of fraud on the part of the assured; or by reason of claims arising under any obligation of the assured; or under any act, thing, or trust relationship, done created, suffered or permitted by the assured.

The suit which the insurer refused to defend was brought against the insured, Tower Land & Investment Company, by Sarah Ballard Hall in a United States district court. Hall alleged in her amended complaint, on which that suit was tried, that she was the owner of an undivided one-half interest in the land in question, that on October 30, 1964, her father, purporting to act as her "custodian," executed a quitclaim deed to Coffee Cups, Inc. purporting to divest her of her interest, that she was then a minor whose disabilities had not been removed, and that her father had no legal capacity to divest her of ownership or to transfer her title. The complaint further alleges:

Defendant, acting by and through its agent, employee, officer and shareholder, R. B. Payne, knew that Plaintiff was a minor whose disabilities had not been removed. Defendant further knew, or in the exercise of common business judgment and care, should have known, that G. E. Hall did not have the legal capacity to divest Plaintiff of her ownership in and to real property, and particularly the subject property, or to transfer her title therein to third persons. Defendant further knew of Plaintiff's interest in the subject property when Defendant acquired its interest therein.

The complaint prays for judgment establishing Hall's undivided one-half interest in the property, removing Tower's claim as a cloud on that interest, and voiding any and all conveyances and instruments which would operate to divest her of her interest.

After the insurer refused to defend Hall's suit, the insured employed its own counsel, who made a successful defense. The expenses of that defense are claimed in the present action.

■ The insurer contends that Hall's suit was within the exclusion because it was based either on fraud by Tower or its agents or breach of some obligation by Tower. It insists that Hall never owned any interest in the property, but only owned stock in Coffee Cups, Inc., which had conveyed the property to Tower, and that her claims "were brought either on theories of a fraudulently or collusively induced sale to Tower by Tower and/or agents, that Tower had some obligation to fulfill, has breached such obligation or that Miss Hall's minority had prevented the transfer in some way—a fact that was known or should have been known by Tower." The insurer points out that the present record shows Hall's suit to be the second of two suits brought by her against Tower, that in the first suit, which the insurer defended under a reservation of rights, Hall had expressly alleged fraud and violation of a fiduciary obligation, and that the second suit was finally disposed of on appeal on the ground that the first judgment was res judicata, the appellate court expressly holding that both suits were "based on the same cause of action." That decision is reported as *Hall v. Tower Land & Investment Company*, 512 F.2d 481 (5th Cir. 1975). Thus, the insurer argues, the record shows that both of Hall's suits were within the exclusion.

We cannot agree with this argument because we find that the amended complaint, on which Hall's second suit was tried, states a claim of title independent of any allegation of fraud or breach of obligation. The gist of the amended complaint is that Hall owned an undivided half interest, that her father, purporting to act as her "custodian," attempted to convey that interest to Coffee Cups, Inc. but "did not have the legal capacity" to divest her of her interest or to transfer her title to third persons, and that Tower or its agents "knew or should have known" of her father's lack of capacity

when it acquired its interest. Entirely apart from the allegation of what Tower's agents "knew or should have known," the facts alleged in the complaint, if established by proof, would have supported a judgment for Hall, since if she had owned an undivided interest and Tower was claiming under a deed from a "custodian" who had no authority to make a conveyance, she would be entitled to recover her interest, regardless of whether Tower had notice of any lack of authority of the "custodian" to make the conveyance. Stripped of superfluous verbiage, Hall's claim is simply a claim of record title rather than a claim based on fraud by the insured or on breach of any obligation to the claimant. Therefore, her suit was within the general obligation assumed by the insurer in the contract to defend the insured against claims adverse to the insured title.

■ The disposition of the second suit on the ground of res judicata does not affect the obligation of the insurer because, regardless of Hall's allegation of fraud and breach of fiduciary obligation in the first suit, the rule is settled that the obligation of an insurer to defend must be determined from allegations of the pleading when considered in light of the provisions of the insurance contract, without reference to the truth or falsity of such allegations, or the claimant's ultimate right of recovery. *Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex.1973). Under this rule, the evidence in the second suit is also immaterial. Neither do the allegations of the original complaint in the second suit affect the obligations of the insurer, since, in determining the question of coverage, the contents of earlier, superseded pleadings cannot be considered. *General Ins. Corp. v. Harris*, 327 S.W.2d 651, 655 (Tex. Civ.App.—Dallas 1959, no writ).

■ Although the allegations of Hall's amended complaint, with its apparently superfluous allegations of what Tower's agents "knew or should have known," may raise some uncertainty as to the true basis of her claim of title, there is at least doubt as to whether this pleading would support

recovery on simple proof of a record legal title to an undivided half interest, of which she had not been divested by any conveyance to Tower or those through whom it claimed. In determining the obligation of an insurer to defend, any doubt as to whether the pleading, in the suit against the insured, states a claim within the coverage of the insurance contract must be resolved in favor of the insured. *Heyden Newport Chemical Corp. v. Southern General Ins. Co.,* 387 S.W.2d 22, 26 (Tex.1965).

Since we hold that Hall's claim as alleged in her amended complaints was not within the exclusion relied on by the insurer, we express no opinion on the contention of the insured that the exclusion does not apply to the insurer's obligation to defend, as distinguished from its obligation to pay for "actual monetary loss."

Affirmed.